769 So.2d 1151 (2000)
Robert FASIG, Christopher G. Stenzel, et al., Appellants,
v.
FLORIDA SOCIETY OF PATHOLOGISTS, etc., et al., Appellees.
No. 5D99-2929.
District Court of Appeal of Florida, Fifth District.
November 9, 2000.
*1152 Gordon A. Dieterle of Mattlin & McClosky, P.A., Boca Raton, for Appellants.
David L. Evans of Mateer & Harbert, P.A., Orlando, and Jack R. Bierig, Richard D. Raskin & Scott D. Stein of Sidley & Austin, Chicago, for Appellees.
THOMPSON, C.J.
Appellants Ted Doss, Robert Fasig, Christopher Stenzel, and Kevin Marshal ("appellants") timely appeal the trial court's order denying their motion to intervene. Because the order operates as a final adjudication on the merits as to the appellants, we have jurisdiction. Fla. R.App. P. 9.030(b)(1)(A). We affirm.
The underlying action was filed in September 1998 by appellees Florida Society of Pathologists, Ameripath Florida, Inc. ("Ameripath"), and Ruffolo Hooper & Associates, M.D., P.A. ("Ruffolo Hooper") (collectively, "appellees") against the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States"). Central States is a health benefits plan regulated by the Employee Retirement Income Security Act (ERISA). Florida Society of Pathologists is the largest professional organization of pathologists in Florida Ameripath and Ruffolo Hooper are pathology practices which provide laboratory services for patients throughout the State. Central States is a multi-employer/employee health and welfare plan and has participants, including appellants, who reside in Orange County and elsewhere in Florida. Appellants are patients treated by pathologists who are members of the Florida Society of Pathologists and are participants in the Central States health plan.
Appellees assert that Central States has been disseminating false and misleading information to its insureds, like the appellants, concerning certain fees, known as professional component charges, pathologists charge patients. Professional component charges are fees for testing bodily fluids as part of the diagnostic process for individual patients, although the fluids are not drawn by pathologists and are tested by machines, rather than pathologists. Because professional component charges are not backed by patient-specific services or treatment, Central States does not provide coverage for these charges.
*1153 Appellees contend that Central States has been sending letters to its insureds, like appellants, telling them that the professional component fees are improper and unreasonable. They contend that Central States is misleading its insureds regarding the results of a federal court case which determined that Central States did not have to pay the professional component fees.[1] In appellees' amended complaint, which includes two counts[2], they ask for three forms of relief: i) a judgment declaring that the letters disseminated by Central States contain deceptive statements and make material omissions regarding the practice of professional component billing for clinical pathology services; ii) a judgment declaring that pathologists are entitled to bill patients directly for the professional component of clinical pathology services for patients; and iii) a permanent injunction enjoining and restraining Central States from directly or indirectly disseminating information of any kind, which misrepresents or falsely describes the legality of the practice of professional component billing.[3]
Central States moved to dismiss the amended complaint and the motion was denied. Following the denial of the motion to dismiss and the filing of Central States' answer, appellants filed their motion to intervene. The trial court denied the motion to intervene, finding that the appellants' interest was not of such a direct and immediate character that they would gain or lose from the direct legal operation and effect of a judgment. The court further ruled that even if the appellants had a cognizable interest in the case, "such interest [was] sufficiently protected by [Central States]."
Intervention is a proceeding by which one not originally a party to a suit is permitted on his or her own application to appear and join one of the original parties in maintaining a cause of action or defense against some or all of the parties to the proceeding as originally instituted. See Fla. R. Civ. P. 1.230. Florida Rule of Civil Procedure 1.230 states:
Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.
Although intervention is called a matter of right, in fact allowing intervention is at the trial court's discretion. The power to grant or deny intervention in a pending litigation rests within the sound discretion of the trial court and will not be disturbed without a showing of abuse of discretion. See Union Central Life Ins. Co. v. Carlisle, 593 So.2d 505 (Fla.1992); Florida Wildlife Federation, Inc. v. Board of Trustees of Internal Improvement, 707 So.2d 841 (Fla. 5th DCA 1998); John G. Grubbs, Inc. v. Suncoast Excavating, Inc., 594 So.2d 346 (Fla. 5th DCA 1992).
In Union Central Life Insurance, 593 So.2d at 507, the Florida Supreme Court:
established a two-step analysis to decide if the trial court should grant a motion to intervene. The court wrote:
First, the trial court must determine that the interest asserted is appropriate to support intervention.... Once the trial court determines that the requisite interest exists, it must exercise its sound discretion to determine whether to permit intervention.
Florida Wildlife Federation, Inc., 707 So.2d at 842 (quoting Union Central Life Ins. Co.).
To meet the first prong of the test:

*1154 It has generally been held that the interest which will entitle a person to intervene under this provision must be in the matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property of some part thereof, which is the subject of litigation.
Morgareidge v. Howey, 75 Fla. 234, 78 So. 14 (1918) (citations omitted).
Appellants argue on appeal that there are three reasons why they have a direct and immediate interest in the outcome of this litigation, and as such the trial court abused its discretion in not allowing them to intervene. First, they contend that the declaratory judgment appellees seek will entitle appellees to bill appellants directly for the professional component charges. Second, appellants argue that Central States cannot adequately protect their interest. Third, appellants argue that if the trial court enjoins Central States from falsely communicating with appellants concerning the propriety of the professional component billing, it would have a "chilling effect" on appellants' communication with Central States. Their second argument will be addressed last because it relies on either their first argument or their third argument being answered in their favor.
A declaratory judgment allowing appellees to bill appellants directly for the professional component fees would not make appellants directly liable for the charges, contrary to the appellants' first argument for intervention. That is a misapprehension of what the declaratory judgment in this case could do. The Declaratory Judgment Act states: "[n]o declaration shall prejudice the rights of persons not parties to the proceedings." § 86.091, Fla. Stat. (1997). Since appellants are not parties to the action, this declaration could impose no direct liability to them, even if that is what it set out to do. Instead, the requested declaratory judgment would merely provide that Central States could not interfere with the appellees' authority to bill patients for services supposedly rendered.
If appellees prevail below, appellants' rights to contest a professional component fee will not be foreclosed. Appellants will retain all defenses in any suit against them by any of the pathologists who seek to recover the unpaid professional component fee. Therefore, the proposed intervenors appellantswill not lose directly by the entry of a declaratory judgment in this case. Without that possibility, there is not enough to demonstrate that appellants stand to gain or lose by the direct legal operation and effect of the judgment. See Morgareidge, 78 So. at 15; compare Heatherwood Community Homeowners Assoc., Inc. v. Florida Rock Ind., Inc., 629 So.2d 928, 929 (Fla. 5th DCA 1993)(1992)("the only possible adverse effect that a judgment by the trial court could have on [appellant] would be to require it to be involved in representing its position in new hearings ... [t]his is not the kind of interest that will support intervention").[4]
Next, appellants argue that the possible entry of a permanent injunction prohibiting Central States from making misrepresentations about professional component billing creates a direct and immediate interest sufficient to justify their intervention. Obviously, losing the ability to receive *1155 letters which misrepresent or falsely describe the legality of professional component billing does not amount to an interest sufficient to justify intervention.
Appellants contend that intervention is justified because, if the injunction were entered, Central States' responsibility to disclose the grounds for denying coverage would somehow negatively be affected, and Central States would stop communicating with the appellants. But the injunction would not do that, as the injunction would not speak to Central States' obligation to represent the lawful reasons why it has denied coverage to its participants. Presumably, Central States would continue to inform its participants as to the lawful reasons it has denied coverage, as ERISA requires Central States to do.
Lastly, Appellants argue that the trial court erred by determining in a footnote that: "while the [appellants'] interest is insufficient to warrant intervention, it appears that such interest is sufficiently protected by [Central States] in this action." Even if the trial court was mistaken, the mistake was harmless because the trial court found that the appellants had not demonstrated an interest appropriate to support intervention, the first prong of the two prong test which must be met to demonstrate the right to intervene. Thus, the trial court did not have to reach this issue and, any error on the point is harmless.
AFFIRMED.
SILVERNAIL, Associate Judge, concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
I recognize that there must be something I am missing in this appeal that somehow justifies denying the patients of a hospital the opportunity to challenge, by way of intervention, an attempt by doctors unknown to such patients and without a contract with such patients to get the court to authorize such doctors to bill the patients for services not performed for or on behalf of the patients. Is there a due process problem in this scenario?
This action was filed by the doctors (a group of pathologists) against the insurance company which refused to pay their "professional component" bills[1] charged to all hospital patients who have tests performed because it did not represent "medical care" under Medicare requirements. The doctors concede that the professional component bill indeed does not represent medical care recognized by Medicare but seek an injunction prohibiting the insurer from so advising the hospital patients subjected to such billing because the insurer is allegedly misrepresenting the holding in Central States, Southeast and Southwest Areas Health and Welfare Fund v. Pathology Laboratories of Arkansas, P.A., 71 F.3d 1251 (7th Cir.1995). In addition, the doctors seek an order from the court affirming their right to bill the hospital patients for their professional component "services." And they wish such ruling without being troubled by hearing argument from the affected patients.
The insurer, by letter, advised the patients for whom it would not reimburse the professional component charge that such services did not constitute medical care and was an inappropriate bill. Although the trial court in Central States did hold that the charges did not constitute medical care for Medicare purposes, it refused the insurer's request for an injunction prohibiting the doctors from billing the patients directly. It is questionable whether the *1156 insurer even had standing to raise the issue. The court explained that nothing prevents the doctors from billing their patients for services not covered by welfare benefit plans. But this explanation was based on this assumed fact: "The [trial] court observed that patients agree when entering the Baptist Hospital to pay all bills, whether or not the fees were covered by insurance, and it held that the coverage limitations in the Fund's Plan Document could not alter the patient's contractual commitments." (Emphasis added). Central States at 1253. Why would the insurer in our case, when it has no liability for the charge, present an energetic defense of its insured's rights, even if it has standing to do so?
The patients attempting to intervene in this action shout loudly that they had no such contractual commitment to pay these fees. Clearly the Central States court liked the procedure used by the doctors in billing all patients equally even if some patients received less or perhaps no benefits from the services. "Pathology Laboratories provides supervisory services of value to all patients, and interpretative services to some. That its record keeping apparatus does not distinguish among them may be dispositive under § 4.11, but so what?" Central States at 1253. "So what" in our case means that if the patient has not contractually agreed to pay for services performed for another patient, the court should not require it.
The doctors also cite American Medical Intern., Inc. v. Scheller, 590 So.2d 947 (Fla. 4th DCA 1991), for the proposition that such billing is appropriate. The Scheller court also liked this billing practice:
Whether or not Dr. Scheller reviewed a clinical test result, he billed for a "professional component." Dr. Scheller did that in accord with not only the established billing practice of pathologists in Florida, but also the established practice in the majority of other states. The evidence showed that pathologists were allowed to bill for a "professional component" on clinical tests performed on their patients, even if the pathologist did not review the test. If a test result was normal, the pathologist might never even see it. An abnormal test result might take hours or even days of the pathologist's time. However, the pathologist was required to charge each patient the same amount for the same test, regardless of how much time he had to spend on it. In this way, the cost of professional services for abnormal tests was spread over all the pathology tests performed on the patients.
Scheller at 949.
The first question I would ask, indeed it troubles the patients herein as well, is "who allowed the doctors to bill for services not performed and who directed this billing procedure?" Was it the legislature? Was it the parties by contract? Was it the pathologist association? Or was it merely an arrangement between the hospital and its pathologists? Again, the patients in this case, if they had the opportunity, would insist they did not authorize it. Should not the patients at least be permitted to ask the doctor when he last spent days examining a particular test and how much time he actually spends on reviewing tests and personally calibrating the equipment each week, each month, each year? Should the patients be foreclosed from challenging the reasonableness of the fee before the court affirms the right of the doctors to so bill?
It is a very good issue, assumed in both Scheller and Central States but not yet properly litigated by the interested parties: May a doctor bill directly a patient he has never met and with whom he has no contractual relationship for services he has not performed for that patient on tests performed by a machine and read by a hospital employee for which the patient has been billed by the hospital and which has been paid either by the patient or his insurance company? It seems to me that fairness, even if we totally ignore due process, requires that the patient be heard on this issue before the doctor is judicially permitted to bill the hospital's (not the *1157 pathologist's) patient and, upon non-payment, assign that bill to a collection agency, perhaps destroying the patient's credit.
Normally if a doctor deliberately billed a non-patient and submitted that bill to a credit agency, he could be held liable for damages resulting from intentionally destroying the non-patient's credit. Hence, the doctors in this case are seeking judicial cover. While it may be true that the court is not being asked to rule on the validity of the individual bills, it is being asked to approve the practice of billing patients by a doctor who has had no relationship with them and who may have performed no services for them at an average fee intended to cover the most simple and the most complex procedures. The doctors will probably be content to assign their claim to a collection agency to collect by extortion: "pay or have your credit ruined." Even if the patient is permitted to defend in the small claims court, it seems that his defense is limited to "I wasn't in the hospital at that time, I was in China."
NOTES
[1] Central States v. Pathology Laboratories of Arkansas, P.A., 71 F.3d 1251 (7th Cir.1995).
[2] The first count is for "Deceptive and Unfair Trade Practices" and the second count is for "Tortious Interference with a Business Relationship."
[3] They also ask for an award of fees and costs.
[4] Appellants complain that their credit ratings will be impugned if they do not pay these bills, and that they are receiving harassing collection-type telephone calls due to unpaid professional component fees. This misses the point of why intervention should be allowed. If appellants wish to prevent these events, they can sue in order to establish that they are not responsible for these fees. That issue is unrelated to the issue as to whether the pathologists "may" bill their patients for these fees, which is what the declaratory judgment prayer seeks.
[1] A professional component bill covers setting up test protocols, calibrating the equipment and supervising the testing, and, if necessary, interpreting the results and consulting with the treating physician. In our case, the patients contend there is no showing, indeed no effort to show, that the doctors supervised the testing of their specimen, interpreted the results of their test or consulted with their physician.