ZEHMER, Chief Judge.
In October 1992, Jacquelyn Juanita Better-son sued Prison Rehabilitative Industries and Diversified Enterprises, Inc. (PRIDE), alleging she sustained personal injuries in a 1988 automobile accident in which she collided with a cow owned by PRIDE and negligently allowed to run free on the highway. PRIDE moved to dismiss the action because PRIDE is an agency of the state, the Department of Insurance had not been served as required by subsection 768.28(7), Florida Statutes (Supp.1988), and such service had not been perfected within 120 days as mandated by rule 1.070(i), Florida Rules of Civil Procedure. See Austin v. Gaylord, 603 So.2d 66 (Fla. 1st DCA 1992). In denying the motion in part,[1] the trial court ruled that PRIDE “was not a state agency within the meaning of section 768.28” at the time the alleged cause of action accrued and therefore Ms. Betterson was not required to comply with that statute. We agree with PRIDE that this ruling is not supported by the relevant statutory provisions and case law.
The definition of “state agency” in section 768.28 includes “corporations primarily acting as instrumentalities of the state.” § 768.28(2), Fla.Stat. In 1992, the Legislature enacted section 946.5026, Florida Statutes,[2] specifically providing that PRIDE “is deemed to be a corporation primarily acting as an instrumentality of the state” and that “[t]he provisions of s. 768.28 shall be applicable” to it. In denying sovereign immunity status to PRIDE in the instant case, the trial court implicitly ruled that section 946.5026 should be treated as a substantive change to existing law and given prospective effect only. PRIDE argues that rather than changing the law, section 946.5026 expressly clarified PRIDE’s previously existing status under the law. PRIDE’s contention is consistent with the generally accepted rule of statutory construction that “the court may consider subsequent enactments of a statute as an aid to interpreting the original legislation” and “[t]he amendment of a statute does not necessarily indicate that the legislature intended to change the law.” Dade County v. AT & T Info. Sys., 485 So.2d 1302, 1304 (Fla. 3d DCA 1986). In State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529, 531 (Fla.1973), the supreme court explained:
*780 The mere change of language does not necessarily indicate an intent to change the law for the intent may be to clarify what was doubtful and to safeguard against misapprehension as to existing law. Helvering v. New York Trust Co., 292 U.S. 455, 468, 54 S.Ct. 806, 810, 78 L.Ed. 1361 (1934). The language of the amendment in 1971 was intended to make the statute correspond to what had previously been supposed or assumed to be the law. The circumstances here are such that the Legislature merely intended to clarify its original intention rather than change the law. It should be noted that this change was made before a case had arisen requiring a construction of the statute. See Dye v. Markey, 259 Iowa 1045, 147 N.W.2d 42 (1966).
See also Ocala Breeder Sales Co. v. Division of Pari-Mutuel Wagering, Department of Bus. Reg., 464 So.2d 1272, 1274 (Fla. 1st DCA 1985); Seaboard Coast Line R.R. v. O’Connor, 229 So.2d 663, 666 (Fla. 2d DCA 1969), cert. denied, 237 So.2d 754 (Fla.1970). Applying the foregoing rule of construction to the statutory scheme that establishes and regulates PRIDE, we conclude that the enactment of section 946.5026 was merely intended to clarify and make entirely free from any doubt PRIDE’s existing status as an instrumentality of the state.
The statutory scheme governing PRIDE that was in effect prior to the enactment of section 946.5026 contained numerous provisions for extensive governmental control over PRIDE’s day-to-day operations sufficient for it to constitute an instrumentality of the state consistent with the rationale of our holding in Shands Teaching Hospital and Clinics, Inc. v. Lee, 478 So.2d 77, 79 (Fla. 1st DCA 1985). It has long been the policy of this state to provide “agricultural and marketing program[s]” to inmates of the Department of Corrections in order to facilitate their rehabilitation and reentry into society. § 946.006(1), Fla.Stat. (1993). The Legislature has specifically found that the rehabilitative benefits provided to inmates by correctional work programs of the Department of Corrections are “essential to the state.” § 946.501(1), Fla.Stat. In 1981, the Legislature concluded that to carry out the laudable goals of these programs, provide for more effective and efficient management and administration, and contain the cost of the correctional system, the Department of Corrections should lease the prison industry program to a nonprofit corporation “organized solely for the purpose of operating” the program. See Ch. 81-125, § 1, at 254, Laws of Fla. Although the resulting legislation recites in subsection 946.502(5) that the correctional work programs “can best operate independently of state government,” it also recognizes that “the state [has] a continuing interest in assuring continuity and stability” of the programs. § 946.502(4), Fla.Stat. Thus, while PRIDE was accorded substantial independence in the running of the work programs, its essential operations nevertheless remained subject to a number of legislatively mandated constraints over its day-today operations. See, e.g., § 946.515(5), Fla. Stat. (PRIDE is only permitted to sell its manufactured goods to private entities upon approval of the Governor); § 946.516(1) (PRIDE must annually provide the Governor and the Legislature with an independently audited financial statement and an in-depth status report concerning the operation of the correctional work programs); § 946.516(3) (PRIDE is subjected to both financial and performance audits by the Auditor General); § 946.511 (Department of Corrections is required to make a sufficient number of inmates available to PRIDE and to approve policies and procedures established by PRIDE relating to the use of inmates in its work programs); § 946.502(1) (PRIDE is restricted to nonprofit status); § 946.504(5)(a)2 (PRIDE’s articles of incorporation must be approved by the Governor); § 946.508 (Governor’s Office administers the Correctional Work Program Revolving Trust Fund which contains state funds for use by PRIDE); § 946.505 (State of Florida has a reversion-ary interest in all property acquired by PRIDE which relates to a correctional work program). These statutory constraints cumulatively constitute sufficient governmental control over PRIDE’s daily operations to require the conclusion as a matter of law that *781 PRIDE has, from its inception, acted primarily as an instrumentality of the state. See Shands Teaching Hosp. and Clinics, Inc., 478 So.2d 77.[3] Furthermore, as PRIDE points out, because these statutory provisions existed long before the 1992 official legislative confirmation of PRIDE’s status for purposes of section 768.28, the enactment of section 946.5026 manifested only legislative intent to statutorily recognize PRIDE’s existing status and thereby clarify the state of the law. See Seaboard Coast Line R.R. Co., 229 So.2d at 666.
The declaration in subsection 946.502(2) that PRIDE is not an agency within the meaning of subsection 20.03(11) is not inconsistent with our holding, and we reject Ap-pellee’s argument to the contrary. Subsection 20.03(11) defines the term “agency” to provide for a uniform nomenclature throughout the structure of the executive branch. Subsection 768.28(2), on the other hand, defines “state agency” in much broader terms for the purpose of identifying entities entitled to sovereign immunity protection. Neither are we dissuaded from our conclusion by Appellee’s argument that the provision in subsection 946.514(3), recognizing that PRIDE shall enjoy sovereign immunity in lawsuits filed against it by inmates, indicates an intent to deprive PRIDE of such immunity in all other classes of lawsuits. This statutory provision expressly recognizing that sovereign immunity applies to lawsuits by a particular class of persons in the employ of PRIDE is consistent with the conclusion that PRIDE has, from its inception, been an agency of the state subject to the statutes governing sovereign immunity. Seaboard Coast Line R.R. Co.
Accordingly, the trial court erred in ruling that PRIDE was not an instrumentality of the state within the meaning of section 768.28 so as to require service on the Department of Insurance. The order denying PRIDE’s motion to dismiss is reversed and this cause is remanded for entry of an order
dismissing the cause of action against PRIDE.
REVERSED AND REMANDED.
KAHN and VAN NORTWICK, JJ., concur.

. In the same order, the trial court granted the "motion for dismissal of the complaint for failure to state a cause of action in tort ... with leave to amend.” We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i) to review that portion of the order denying the motion to dismiss for noncompliance with rule 1.070(j). Austin.

. See Ch. 92-310, § 28, at 2979, Laws of Fla.

. Although the opinion in that case noted that the actual extent of control is ordinarily a question of fact to be proved by evidence, here the proof of control rests entirely on statutory provisions, which leaves the issue to be decided as a matter of law.