Ms. Jo Ann Hutchinson Executive Director Florida Commission for the Transportation Disadvantaged 605 Suwannee Street, MS-49 Tallahassee, Florida 32399-0450
Dear Ms. Hutchinson:
You ask the following question:
May nongovernmental Community Transportation Coordinators, either for-profit or not-for-profit, claim sovereign immunity under section 768.28, Florida Statutes?
In sum:
Nongovernmental Community Transportation Coordinators exercising the powers and duties prescribed in Part I, Chapter 427, Florida Statutes, would be acting primarily as an instrumentality of the state that may claim sovereign immunity under section 768.28, Florida Statutes.
The Commission for the Transportation Disadvantaged (commission) has been asked by a Community Transportation Coordinator (CTC) whether the liability protections in Chapter 768, Florida Statutes, extend to such entities. The commission's general counsel has opined that CTCs operate as instrumentalities or agencies of the state and are, therefore, able to claim the protections of the sovereign immunity statutes. I concur with the commission counsel's conclusion based on the following discussion.
Section 768.28, Florida Statutes, in accordance with section 13, Article X of the Florida Constitution, waives sovereign immunity for the state and its agencies and subdivisions to the extent specified in the act. Monetary limitations are specified in the statute allowing payment of a judgment against the state or its agencies and subdivisions.[1]
State agencies or subdivisions within the scope of section 768.28, Florida Statutes, are defined to include "independent establishments of the state; counties and municipalities; andcorporations primarily acting as instrumentalities or agencies ofthe state, counties, or municipalities[.]"[2] (e.s.) Thus, it must be determined whether nongovernmental CTCs are corporations primarily acting as instrumentalities or agencies of the state.
The question of whether a nongovernmental corporation may attain the status of "acting primarily on behalf of the state" has been judicially considered to turn on whether the day-to-day operations of the entity are subject to extensive governmental control.[3]
The First District Court of Appeal, in Shands Teaching Hospitaland Clinics, Inc. v. Lee by and through Lee,[4] looked to federal law, by analogy, to find that the critical factor in determining whether an entity is an agency for purposes of sovereign immunity is the existence of government control over the "`detailed physical performance' and `day to day operation of that entity.'"[5] The Shands court considered the legislation organizing the hospital, authorizing the state to lease the facility to a private nonprofit corporation, and directions from the Legislature that Shands study and develop a plan to become more self-sufficient and fiscally independent, in concluding that the intent of the Legislature was to treat Shands as an autonomous and self-sufficient entity, not primarily acting as an instrumentality on behalf of the state.
In contrast, the First District Court of Appeal in PrisonRehabilitative Industries v. Betterson[6] evaluated the statutes creating Prison Rehabilitative Industries and Diversified Enterprises (PRIDE) to determine whether the entity was acting primarily as an instrumentality of the state. The court found numerous provisions for extensive governmental control over PRIDE's day-to-day operations. While the legislation recognized that PRIDE could best operate independently of state government, it also stressed the state's continuing interest in assuring continuity and stability of the program. The court found that "while PRIDE was accorded substantial independence in the running of the work programs, its essential operations nevertheless remained subject to a number of legislatively mandated constraints over its day-to-day operations."[7]
A Community Transportation Coordinator is "a transportation entity recommended by a metropolitan planning organization, or by the appropriate designated official planning agency . . . in an area outside the purview of a metropolitan planning organization, to ensure that coordinated transportation services are provided to the transportation disadvantaged population in a designated service area."[8] The CTC "may provide all or a portion of needed transportation services for the transportation disadvantaged butshall be responsible for the provision of those coordinatedservices."[9] (e.s.) Performance of the CTC in providing transportation services is evaluated by the local coordinating board using evaluation criteria approved by the Commission for the Transportation Disadvantaged.[10] This office has not been advised of a contractual agreement that would indicate the CTC operates as an independent contractor when providing transportation services.[11]
Among the powers and duties given to a CTC is the authority to execute contracts for service, review all transportation operator contracts annually, approve and coordinate the use of school bus and public transportation services in accordance with the transportation disadvantaged plan, review applications for available transportation disadvantaged funds, develop and implement a memorandum of agreement including a service plan for submission to the commission, establish priorities for recipients of nonsponsored transportation disadvantaged services purchased with transportation disadvantaged trust fund moneys, and have full responsibility for the delivery of transportation services for the transportation disadvantaged.[12] Thus, the CTC appears to have comprehensive powers to carry out the legislative mandate to provide transportation services set forth in Part I, Chapter 427, Florida Statutes. As noted above, however, the exercise of these legislatively granted powers and duties is subject to the oversight of the Commission for the Transportation Disadvantaged and the local coordinating board.
In light of the legislatively mandated constraints over the day-to-day operations of the Community Transportation Coordinator and the ultimate oversight of its operations by the commission and the local coordinating board, it is my opinion that a nongovernmental Community Transportation Coordinator carrying out duties prescribed in Part I, Chapter 427, Florida Statutes, would be an entity acting primarily as an instrumentality of the state able to claim sovereign immunity under section 768.28, Florida Statutes.[13]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 768.28(5), Fla. Stat., limits a judgment by any one person to $100,000, and limits any claim or judgment that, when totaled with all other claims paid by the state arising out of the same incident or occurrence, to $200,000.
[2] Section 768.28(2), Fla. Stat.
[3] See, e.g., Prison Rehabilitative Industries v. Betterson,648 So.2d 778 (Fla. 1st DCA 1994) and Shands Teaching Hospitaland Clinics, Inc. v. Lee, By and Through Lee, 478 So.2d 77 (Fla. 1st DCA 1985) (teaching hospital treated by legislature as autonomous and self-sufficient entity, not subject to direct control by the state, was not primarily acting as an instrumentality on behalf of the state).
[4] 478 So.2d 77 (Fla. 1st DCA 1985).
[5] Id. at 79.
[6] 648 So.2d 778 (Fla. 1st DCA 1994).
[7] 648 So.2d at 780.
[8] Section 427.011(5), Fla. Stat.
[9] Section 427.015(2), Fla. Stat.
[10] Id.
[11] Cf., Mingo v. ARA Health Services, Inc., 638 So.2d 85,86-87 (Fla. 2d DCA 1994) (corporation contracted to provide medical services to county jail not a state agency where contract clearly defined relationship as that of independent contractor and not as an agent, employee, partner or joint venturer of or with the sheriff).
[12] See, s. 427.0155(1)-(8), Fla. Stat.
[13] Concluding that the CTC is an "entity acting primarily as an instrumentality of the state" does not necessitate the conclusion that it is an "agency" of the state for other statutory purposes. Cf., s. 284.31, Fla. Stat., stating that "[t]he insurance risk management trust fund shall, unless specifically excluded by the Department of Insurance, cover all departments of the State of Florida and their employees, agents, and volunteers. . . ."