PER CURIAM.
Ereck Plancher, II, a University of Central Florida (UCF) football player, collapsed and died during football practice after participating in a series of conditioning drills. After his death, Ereck’s parents (the Planchers) filed a negligence action against UCF and UCF Athletics Association, Inc. (UCFAA), the statutorily[1] authorized direct-support organization responsible for administering UCF’s athletics department. After a three-week trial, the jury found UCFAA liable and awarded the Planchers damages in the amount of $10 million.[2] UCFAA appeals the final judgment, arguing, inter alia, that the trial court erred when it denied UCFAA’s motion for summary judgment based on a release found in Paragraph M of the signed Medical Examination and Authorization Waiver and, again, when it denied UCFAA’s motion for partial summary judgment, and entered summary judgment against UCFAA, on the issue of limited sovereign immunity. While we agree with the trial court on the issue of the release, because we find UCFAA was entitled to limited sovereign immunity, we reverse the final judgment entered against it.[3]
Standard of Review
The standard of review governing a trial court’s ruling on summary judgment is de novo. Kaplan v. Morse, 870 So.2d 934, 936 (Fla. 5th DCA 2004). Summary judgment is only proper when there is no *1100 genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Analysis
The facts surrounding the untimely death of Ereck Plancher are disturbing. Nevertheless, we need not reiterate them here. As troubling as the circumstances involved in this young athlete’s death may be, our analysis is not dependent upon whether the evidence presented at trial was sufficient to establish that UCFAA’s negligence caused or contributed to the cause of his death. The only issues we must resolve are whether the release found in the agreement to participate clause of the Medical Examination and Authorization Waiver, which was signed by Ereck Plancher, absolved UCFAA of any future negligence and, if not, whether UCFAA was entitled to limited sovereign immunity pursuant to section 768.28(2) and (5), Florida Statutes (2011). We begin our discussion with the issues surrounding the release.
A. Release
Prior to being allowed to play football for UCF, UCFAA required its players to complete a number of forms, including an agreement entitled “UCFAA, INC. SPORTS MEDICINE DEPARTMENT Medical Examination & Authorization Waiver” (hereinafter the “Authorization”)[4] and a scholarship agreement. The Authorization asked the players to acknowledge, affirm and represent their present physical condition, future complaints, steroid and other drug use, and use of supplements. The Authorization discussed UCFAA’s policies on body piercings, medical treatment, drug testing and medical insurance. The release at issue is located on the last page of the Authorization, in Paragraph M, under the heading “Agreement to Participate.” It provides the following:
I am aware that playing, practicing, training, and/or other involvement in any sport can be a dangerous activity involving MANY RISKS OF INJURY, including, but not limited to the potential for catastrophic injury. I understand that the dangers and risks of playing, practicing, or training in any athletic activity include, but are not limited to, death, serious neck and spinal injuries which may result in complete or partial paralysis, serious injury to virtually all bones, joints, ligaments, muscles, tendons, and other aspects of the muscular-skeletal system, and serious injury or impairment to other aspects of my body, general health and well-being. Because of the aforementioned dangers of participating in any athletic activity, I recognize the importance of following all instructions of the coaching staff, strength and conditioning staff, and/or Sports Medicine Department. Furthermore, I understand that the possibility of injury, including catastrophic injury, does exist even though proper rules and techniques are followed to the fullest. I also understand that there are risks involved with traveling in connection with intercollegiate athletics.
In consideration of the University of Central Florida Athletic Association, Inc. permitting me to participate in intercollegiate athletics and to engage in all activities and travel related to my sport, I hereby voluntarily assume all risks associated with participation and *1101 agree to exonerate, save harmless and release the University of Central Florida Athletic Association, Inc., its agents, servants, trustees, and employees from any and all liability, any medical expenses not covered by the University of Central Florida Athletic Association’s athletics medical insurance coverage, and all claims, causes of action or demands of any kind and nature whatsoever which may arise by or in connection with my participation in any activities related to intercollegiate athletics.
The terms hereof shall serve as release and assumption of risk for my heirs, estate, executor, administrator, assignees, and all members of my family.
In January 2007 and, again, in April 2007, Ereck Planeher initialed each page of the Authorization and signed it with an attestation that he both read and understood it.[5] Based on this fact, UCFAA pled the release as an affirmative defense and moved for summary judgment, arguing that because the document Ereck signed contained a clear and unambiguous exculpatory clause, he waived his right to file any claim whatsoever against UCFAA. The trial court denied UCFAA’s motion finding that “there exists a legitimate disputed fact as to whether the [Agreement] constituted an unequivocal and unambiguous release of liability.” Later, the trial court precluded UCFAA from raising the issue at trial, finding that the exculpatory clause was unenforceable as a matter of law. On appeal, UCFAA argues it was entitled to summary judgment based on the clear language in the release. We disagree.
An exculpatory clause purports to deny an injured party the right to recover damages from a person negligently causing his injury. Cain v. Banka, 932 So.2d 575 (Fla. 5th DCA 2006) (citing Kitchens of the Oceans, Inc. v. McGladrey & Pullen LLP, 882 So.2d 270 (Fla. 4th DCA 2002)). They are disfavored in the law because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss. Applegate v. Cable Water Ski, L.C., 974 So.2d 1112, 1114 (Fla. 5th DCA 2008). Such clauses are strictly construed against the party seeking to be relieved of liability. Sunny Isles Marina, Inc. v. Adulami, 706 So.2d 920 (Fla. 3d DCA 1998). Thus, exculpatory clauses are enforceable only where and to the extent that the intention to be relieved from liability is made clear and unequivocal. Tatman v. Space Coast Kennel Club, Inc., 27 So.3d 108, 110 (Fla. 5th DCA 2009). The wording must be so clear and understandable that “an ordinary and knowledgeable person will know what he is contracting away.” Id. (quoting Gayon v. Bally’s Total Fitness Corp., 802 So.2d 420 (Fla. 3d DCA 2001)); see also Raveson v. Walt Disney World Co., 793 So.2d 1171 (Fla. 5th DCA 2001). A phrase in a contract is ambiguous when it is of uncertain meaning and may be fairly understood in more than one way. Tatman, 27 So.3d at 110 (citing Nagel v. Cronebaugh, 782 So.2d 436, 439 (Fla. 5th DCA 2001)).
The exculpatory clause at issue here did not expressly inform Ereck that he would be contracting away his right to sue UCFAA for its own negligence. This, alone, would be enough to render the clause unenforceable in any District in Florida other than ours. See Give Kids *1102 the World, Inc. v. Sanislo, 98 So.3d 759, 759 (Fla. 5th DCA 2012) (holding that an exculpatory clause need not have an express reference to negligence in order to render it effective as to negligence actions, and certifying conflict with the First, Second, Third, and Fourth District Courts of Appeal as to this issue), rev. granted, Sanislo v. Give Kids the World, Inc., No. SC12-2409, 2013 Fla. LEXIS 1249 (Fla. June 3, 2013). The problem here is that UCFAA immediately preceded the broad waiver language with a paragraph outlining the risks inherent in any sport, and stating:
Because of the aforementioned dangers of participating in any athletic activity, I recognize the importance of following all instructions of the coaching staff, strength and conditioning staff, and/or Sports Medicine Department. Furthermore, I understand that the possibility of injury, including catastrophic injury, does exist even though proper rules and techniques are followed to the fullest.
This preamble, when coupled with a clause that does not expressly state that Ereck would be waiving a negligence action, could have easily led Ereck to believe that UCFAA would be supervising his training and instructing him properly (non-negligently), and that he was only being asked to sign the exculpatory clause to cover injuries inherent in the sport-that could occur “even though proper rules and techniques are followed to the fullest.” The second district reached a similar conclusion in Murphy v. Young Men’s Christian Ass’n of Lake Wales, Inc., 974 So.2d 565 (Fla. 2d DCA 2008).
In Murphy, the plaintiff was injured while using exercise equipment at the YMCA’s exercise facility. 974 So.2d at 566. She sued the YMCA claiming it was negligent in failing to maintain, inspect, and repair its exercise equipment. Id. at 567. The trial court granted summary judgment in favor of YMCA based on an exculpatory clause found in the membership application. The clause provided:
I am an adult over 18 years of age and wish to participate in Lake Wales Family YMCA activities. In addition I give my children permission to participate in Lake Wales Family YMCA activities. I understand that even when every reasonable precaution is taken, accidents can sometimes still happen. Therefore, in exchange for the YMCA allowing me to participate in YMCA activities, I understand and expressly acknowledge that I release the Lake Wales Family YMCA and its staff members from all liability for any injury, loss or damage connected in any way whatsoever to my (or my children’s) participation in YMCA activities, whether on or off the YMCA’s premises. I understand that this release includes any claims based on negligence, action or inaction of the Lake Wales Family YMCA, its staff, directors, members and guests. I have read and am voluntarily signing this authorization and release.
Id. at 566 (emphasis added).
Here, the second district concluded the waiver was ambiguous and unenforceable due to the confusion caused by the juxtaposition of the “every reasonable precaution” provision with the provision for the release of “any claims based on negligence.” Id. at 568-69. Since a reasonable reader could believe that the liability waiver only extended to claims for injuries that were unavoidable “even when every reasonable precaution” had been taken, the court determined the waiver did not clearly and unequivocally release the YMCA from liability.
UCFAA argues that the confusion that existed in Murphy does not exist in this case because the two provisions are in *1103 separate paragraphs and not connected by the word “therefore.” Yet, when read together, the provisions underscoring the importance of following UCFAA’s rules and the risk of an accident regardless of whether the proper rules and techniques are followed, comes before the exculpatory clause, which could result in the reasonable reading asserted by the Planchers. This is because the reader is first assured, inferentially, that the proper rules and techniques will be implemented before he comes to the language waiving liability. Accordingly, we find no error in the trial court’s determination that the release was ambiguous.
We now turn to the issue of sovereign immunity and whether UCFAA is entitled to have the judgment reduced pursuant to section 768.28(5), Florida Statutes.
B. Sovereign Immunity
Section 768.28, Florida Statutes, provides for the waiver of sovereign immunity in tort actions and sets recovery limits. § 768.28(2) and (5), Fla. Stat. (2011). According to the statute, “[t]he state and its agencies and subdivisions are liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment.” § 768.28(5), Fla. Stat. (2011). Additionally, neither the state nor its agencies are liable to pay a claim or judgment by any one person that exceeds $200,000. Id.
Section 768.28(2), Florida Statutes, defines the state agencies or subdivisions entitled to limited sovereign immunity as follows:
As used in this act, “state agencies or subdivisions” include the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as in-strumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority.
Neither party disputes UCF’s status as a state agency or that it is entitled to limited sovereign immunity pursuant to sections 768.28(2) and (5), Florida Statutes. At issue is UCFAA’s status. The Florida Supreme Court recently confirmed that private corporations primarily acting as agencies or instrumentalities of independent establishments of the State are included within this definition. See Keck v. Eminisor, 104 So.3d 359, 368 (Fla.2012) (“The State acts through its agencies and independent establishments, and a corporate instrumentality of an agency or independent establishment is an instrumentality of the state.”). Accordingly, the question we must answer is whether UCFAA is a corporation primarily acting as an instrumentality of UCF under section 768.28(2), so as to extend the immunity afforded UCF to UCFAA as well.[6] We hold that it is.
*1104 In 2003, UCF created UCFAA as a University direct-support organization (DSO)[7] for the purpose of administering its athletics department.[8] UCFAA asserts that its corporate structure, constructed as directed by section 1004.28, makes it wholly subject to UCF’s governance and financial and operational control. UCFAA’s corporate documents appear to support this assertion.
UCFAA was incorporated pursuant to section 1004.28(l)(a)l., which allows a university to create a not for profit corporation under Chapter 617 that is approved by the Department of State. As required by statute, UCF certified that UCFAA was operating in a manner consistent with the university’s goals and in the state’s best interests. See § 1004.28(l)(a)3., Fla. Stat. (2011). Indeed, according to UCFAA’s articles of incorporation, UCFAA’s purpose is to promote the health and physical welfare of UCF students through intercollegiate athletics. UCFAA gives public notice of its board of directors meetings and holds them in public, consistent with Florida’s Sunshine Law, section 286.011, Florida Statutes (2011).
UCFAA’s bylaws provide for a board of directors of at least six members, four of whom are controlled by UCF. The board includes UCF’s President,[9] who serves as chair of UCFAA’s board; the chair of UCF’s Board of Trustees or a designee; and the presidents of the UCF Alumni Association and Golden Knights Club or their designees. UCF’s President has the power to appoint an unlimited number of additional voting members from UCF’s administration, faculty, or student body. The bylaws also grant UCF’s President the authority to establish an unlimited number of special committees to accomplish any objectives affecting various interests and the welfare of UCFAA and UCF. Consequently, UCF controls UCFAA’s board and the bylaws may not be amended without UCF’s approval. UCF also has the exclusive power to dissolve UCFAA.
UCF and UCFAA entered into a written services agreement stating that UCFAA, at the request of UCF, administers UCF’s intercollegiate athletics program for the benefit of the university and its student athletes. The agreement further states it *1105 is not to be construed to create a joint venture, partnership, or other like relationship between the parties. By agreement, UCFAA’s employees are not employees of the State. UCFAA hires and fires its employees and pays their salaries. Additionally, UCFAA employees do not receive any State benefits.
Accordingly, UCFAA developed its own Policy Manual, Employee Handbook, Sports Medicine Policies, and UCFAA Athletic Business Office Policy and Procedures. Pursuant to the Policy Manual, the UCFAA Senior Management Team is responsible for both strategic planning and day-to-day operations. The Senior Management Team is made up of the UCFAA Athletics Director, who was hired by, reports to, and serves at the pleasure and direction of UCF’s President, and the Assistant and Associate Athletics Directors. UCFAA’s Senior Associate Athletics Director, Internal Operations, assists with day-to-day operations and supervises the sports medicine program, strength and conditioning program, and human resources and risk management departments. The Head Football Coach is employed by UCFAA and controls every aspect of the day-today operations of the football program. He recruits student-athletes, hires and fires assistant coaches and supervises football practices and the conditioning program. Likewise, the Head Football Trainer and Head Athletic Trainer, both UCFAA employees, control the day-today activities of the sports medicine department. Ultimately, however, based on UCF and UCFAA’s hierarchy, UCF’s President remains responsible for the athletics department.
UCFAA has its own Chief Financial Officer (CFO), who manages the day-to-day financial operations of UCFAA. While UCF does not supervise the CFO and the CFO reports directly to UCFAA’s Director of Athletics, as stated earlier, the Director of Athletics reports directly to UCF’s President. Likewise, although UCFAA maintains its own accounting records, has its own bank accounts, and files its own tax returns, the bylaws authorize UCF’s President to monitor and control the use of UCFAA’s resources, to exercise line-item veto over its budget, and to unilaterally modify its budget. Additionally, while UCFAA employees prepare the UCFAA budget, it must provide the UCFAA Board of Directors an overview of the budget.
Pursuant to the service agreement, UCFAA operates the athletics program in exchange for a fee paid by UCF. UCFAA does not receive any money directly from the State.[10] Rather, the moneys are tunneled from the State through UCF. UCF pays UCFAA. an annual amount equal to the amount UCF receives in student athletic fees and loans money to UCFAA. Under the agreement, UCF has the right to audit the books and records of UCFAA,.[11] If UCF chooses to dissolve UCFAA, the corporation’s assets must be distributed to the UCF Foundation, Inc., or as otherwise directed by UCF’s president.
*1106 UCFAA purchases its own private liability insurance with policy limits of $21 million.[12] Accordingly, UCF is not involved in claims made against UCFAA. Furthermore, UCFAA and its employees are not covered through the State’s Risk Management Trust Fund. Indeed, the Services Agreement provides that “UCFAA assumes any and all risks of personal injury and property damage with respect to the negligent acts or omissions of UCFAA or other persons acting or engaged to act by UCFAA in furtherance of the obligations of UCFAA under this agreement.” Yet, it clarifies that nothing in the agreement should be construed or interpreted as “(1) denying to either party any remedy or defense available under the laws of the State of Florida[;] (2) the consent of the State of Florida or its agents and agencies to be sued; or (3) a waiver of sovereign immunity of the State of Florida beyond the waiver provided in Section 768.28, Florida Statutes.” (Emphasis added).
Based on these facts, UCFAA moved for summary judgment in the trial court, claiming it was entitled to limited sovereign immunity under section 768.28(2), Florida Statutes. The trial court denied UCFAA’s motion finding that UCFAA had been expanded beyond the limits allowable by the state and that the undisputed evidence demonstrated that UCFAA had not been substantially controlled by UCF in either day-to-day decisions or major programmatic decisions.[13]
The key factor in determining whether a private corporation is an instrumentality of the state for sovereign immunity purposes is the level of governmental control over the performance and day-today operations of the corporation. See Prison Rehabilitative Indus. & Diversified Enters., Inc. v. Betterson, 648 So.2d 778 (Fla. 1st DCA 1994); Shands Teaching Hosp. & Clinics, Inc. v. Lee, 478 So.2d 77, 79 (Fla. 1st DCA 1985). The agency must be subject to something more than the sort of control that is exercised by the government in its regulatory capacity. Pagan v. Sarasota County Pub. Hosp. Bd., 884 So.2d 257, 267-68 (Fla. 2d DCA 2004) (citing United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)). The control that flows from a simple contractual arrangement between the government and a corporate entity ordinarily will *1107 not be considered sufficient to establish that the contracting corporate entity is an instrumentality or agency of the state. Id. (citing Mingo, 638 So.2d at 86 (holding that contract defining corporate providers as independent contractors effectively “disavows [the corporation] as a corporation primarily acting as an instrumentality or agency of the state or its subdivisions”)). Similarly, the mere fact that a corporation is created by the government will not necessarily establish that it is a governmental agency or instrumentality. Id.[14]
The issue of whether the state has sufficient control over a private corporation for the purposes of sovereign immunity was addressed in Shands Teaching Hospital & Clinics, Inc. v. Lee, 478 So.2d 77, 79 (Fla. 1st DCA 1985); Prison Rehabilitative Industries & Diversified Enterprises, Inc. v. Betterson, 648 So.2d 778 (Fla. 1st DCA 1994) and Pagan v. Sarasota County Public Hospital Board, 884 So.2d 257 (Fla. 2d DCA 2004). In Shands, the court concluded that Shands Teaching Hospital was not entitled to sovereign immunity because the Legislature intended to treat it as an “an autonomous and self-sufficient entity, one not primarily acting as an instrumentality on behalf of the state.” 478 So.2d at 79.
In Betterson, however, the court reached a different conclusion regarding the status of the non-profit corporation, Prison Rehabilitative Industries and Diversified Enterprises, Inc. (PRIDE). 648 So.2d at 778. The district court found that while the governing statute provided that correctional work programs “can best operate independently of state government,” it also recognized that “the state [has] a continuing interest in assuring continuity and stability” of the programs. Id. at 780 (quoting § 946.502(4), Fla. Stat. (2011)). Therefore, although PRIDE was allowed substantial independence in the running of the work programs, essential operations remained subject to a number of legislatively mandated constraints over its day-to-day operations. The court determined that these statutory constraints cumulatively constituted sufficient governmental control over PRIDE’s daily operations to require the conclusion as a matter of law that PRIDE has, from its inception, acted primarily as an instrumentality of the state. Id. at 780-81.[15]
The Planchers argue that Betterson is distinguishable because PRIDE was subject to numerous legislative constraints es *1108 tablishing extensive government control over its day-to-day operations. For instance, PRIDE needed the Governor’s approval before selling manufactured goods and had to provide the Legislature an in-depth status report on its operations. Additionally, the Department of Corrections had to approve the company’s policies and procedures relating to the use of inmates. Finally, the Planchers point out that PRIDE received state funds from a trust fund administered by the Governor’s office.
Here, the statutes, the bylaws, and the Service Agreement allow UCF the discretion to control UCFAA’s day-to-day operations as much, or as little, as it sees fit. For example, section 1004.28(6), places limitations on UCFAA’s ability to enter into agreements. Additionally, just as PRIDE receives its funds directly from a fund administered by the Governor, UCFAA receives the majority of its funds from UCF, an entity the Planchers concede is an arm of the state.
Pagan is also instructive. 884 So.2d 257. Here the issue was whether the Hospital Board, a state entity, exercised sufficient control over First Physicians Group, a private corporation, for First Physicians Group to be considered an instrumentality of the state. The undisputed facts before the court established that:
First Physicians Group was created by the Hospital Board, initially funded by the Hospital Board, and remains partially funded by it. The Hospital Board has the power to dissolve First Physicians Group and to claim any remaining assets upon dissolution. The nine members of First Physicians Group’s board of directors are elected by the Hospital Board and serve at the pleasure of the Hospital Board. Under the bylaws and articles of incorporation of First Physicians Group, a majority of its board of directors must be composed of sitting Hospital Board members. The chief executive officer of the Sarasota Memorial Health Care System is required to also be president of First Physician Group. Approximately forty physicians have entered into employment agreements with First Physicians Group that provide for full-time employment with First Physicians Group and prohibit the maintenance of private practices or the treatment of any patients other than patients of First Physicians Group.
Id. at 263. On those facts, which all but mirror the formation of UCFAA, the second district held that First Physicians Group was entitled to sovereign immunity.[16] While the Planchers argue Pagan is of little precedential value because the majority did not make a blanket ruling, we disagree, and find Judge Canady’s concurring opinion particularly instructive on how we should apply the facts in this case.
Judge Canady explained that when analyzing the issue of control in cases outside the sovereign immunity context where a principal-agent relationship exists, the focus is on the right to control, instead of actual control. Id. (citing Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 (Fla.2003)). As a result, in those cases, the existence of a principal-agent relationship turns on whether the principal has a sufficient right to control and not on the extent to which the principal exercises actual control. Id. at 270. He concluded that “[j]ust as an ordinary agency relationship can exist without the exercise of actual day-to-day control by the principal, so can a corporation be acting primarily as an *1109 instrumentality or agency of a sovereignly immune entity without that entity exercising actual control over the day-to-day operations of the corporation.” Id.
He further explained that:
It would be unfaithful to the plain meaning of section 768.28(2) to impose a requirement for control of a type that is inconsistent with the separate corporate existence of the entity acting primarily as an instrumentality or agency. The authorization of immunity for corporations under section 768.28(2) necessarily involves a recognition that those corporations will carry out their operations in a manner that is separate and distinct from the operations of the governmental entity to which they are related. The control of the governmental entity over the corporation necessary to establish an instrumentality relationship under section 768.28(2) does not require that the corporation be subsumed in the governmental entity.
Id. We adopt that reasoning here. In doing so, we reject the Planchers’ assertion that for UCFAA to have sovereign immunity, UCF had to actually control UCFAA’s day-to-day operations. Instead, we determine the power to control is sufficient.
Comparing the facts of this case to the facts set forth in Keck, Pagan, and Betterson, we find that UCFAA primarily acts as an instrumentality of UCF. While UCFAA is a private corporation, it is not an autonomous and self-sufficient entity. Rather, UCF created UCFAA in order to take advantage of a privatized athletics program and to accept private donations on behalf of the university from donors who wish to remain anonymous. UCFAA is wholly controlled by and intertwined with UCF, in that UCF created it, funded it and can dissolve it, in addition to oversee its day-to-day operations as much or as little as it sees fit. UCFAA certainly does not possess the power or ability to shut UCF out of its decision-making completely. UCFAA’s sole function is to receive, hold, invest, and administer property and to make expenditures to or for the benefit of UCF. Namely, the purpose of UCFAA is to promote education and science and to encourage, stimulate, and promote the health and physical welfare of the students of UCF by encouraging, conducting, and maintaining all kinds of intercollegiate athletics, games, contests, meets, exhibits, and field sports at UCF and other places in the state. The athletic teams are known as the UCF Knights and wear UCF uniforms. UCF provides UCFAA its facilities and pays UCFAA an amount equal to the amount received by UCF in student athletic fees and in loans. UCFAA holds the property owned by UCF with the power to dispose of or invest such property in such manner as, in the judgment of the board of directors, will best promote the purposes of UCFAA without limitation. Indeed, no amount of spin negates the fact that it is UCF that benefits from UCFAA’s work.
Accordingly, we conclude that UCFAA is entitled to limited sovereign immunity under section 768.28(2), as it functions primarily as an instrumentality of UCF. See also Elend v. Sun Dome, Inc., 370 F.Supp.2d 1206, 2005 U.S. Dist. LEXIS 35264 (M.D.Fla.2005) (ruling that Sun Dome, Inc., a DSO created by USF to operate the Sun Dome for USF’s benefit, is an arm of the state for the purposes of Eleventh Amendment immunity). We therefore reverse the order of the trial court and remand for further proceedings consistent with this opinion.[17]
*1110 AFFIRMED, in part, REVERSED, in part, and REMANDED.
TORPY, C.J., and LAWSON, J„ concur.

. § 1004.28, Fla. Stat. (2011).

. The Planchers dismissed UCF as a party to the lawsuit on the first day of trial.

.We find no merit in UCFAA's claim that it was denied a fair trial because of the trial court’s concerns over time management.

. The Authorization was not among the forms sent to the players’ homes, but was distributed at a team meeting.

. Ereck Planeher was eighteen years old when he signed the release. He graduated early from Lely High School with a 3.9 GPA and was a member of the National Honor Society.

. The opinion in Keck, issued after this case was perfected on appeal, resolved, in UCFAA’s favor, some of the arguments raised by the Planchers in opposition to UCFAA's claim of entitlement to limited sovereign immunity. 104 So.3d at 359. The supreme court specifically rejected the argument that the lack of a statutory declaration precludes a corporation from being considered a state agency or subdivision pursuant to section 768.28(2), finding that a corporation formed by the Jacksonville Transit Authority was entitled to sovereign immunity as "a state agenc[y] or subdivision! ] under section 768.28(2) because it primarily acts as an instrumentality of JTA,” despite the lack of a statute specifically authorizing its formation. Id. at 368-69; see also Mingo v. ARA Health Servs., Inc., 638 So.2d 85, 86 (Fla. 2d DCA 1994) (recognizing that while the lack of an *1104 express statute granting sovereign immunity precludes such immunity as a matter of law, the entity in question could still be determined to be acting as an agency of the state under the facts and circumstances of a particular relationship).

.Pursuant to section 1004.28(l)(a), Florida Statutes (2011), a "University direct-support organization” is an organization which is:
1. A Florida corporation not for profit incorporated under the provisions of chapter 617 and approved by the Department of State.
2. Organized and operated exclusively to receive, hold, invest, and administer property and to make expenditures to or for the benefit of a state university in Florida or for the benefit of a research and development park or research and development authority affiliated with a state university and organized under part V of chapter 159.
3.An organization that a state university board of trustees, after review, has certified to be operating in a manner consistent with the goals of the university and in the best interest of the state. Any organization that is denied certification by the board of trustees shall not use the name of die university that it serves.

. Notwithstanding the delegation of administration to UCFAA, the intercollegiate teams are die UCF Knights, not the UCFAA Knights, and UCF, not UCFAA, is a member institution of the National Collegiate Athletics Association.

. The president of the university, or his desig-nee, must serve on the board of directors and the executive committee of the DSO. § 1004.28(3), Fla. Stat.

. At one time, UCFAA received student athletic fees directly from UCF. However, in 2007, section 1004.28(l)(c), Florida Statutes, was amended to prohibit DSOs from receiving student athletic fees. Now, UCF holds the student athletic fees in an account, UCFAA submits third-party invoices to UCF and UCF pays those invoices from that account.

. The DSO must comply with the rules imposed by the board of trustees in order to use property, facilities, or personal services at any state university. These rules shall provide for budget and audit review and oversight by the board of trustees. § 1004.28(l)(b), Fla. Stat. (2011).

. The Planchers insist that this case does not implicate the concerns underlying sovereign immunity because the payment of the judgment will not adversely affect the State's orderly administration or its coffers, as UCFAA and its insurer, not the State or UCF, are responsible for the judgment. We reject this argument. As UCFAA correctly points out, section 768.28(5), Florida Statutes, specifically states that insurance coverage will have no effect on sovereign immunity liability limits.

. The court’s reasoning, however, appears to be based, instead, on the lack of a specific statutory provision addressing sovereign immunity. The judge stated:
The UCF Athletic Association is a direct-support organization authorized and organized pursuant to Florida Statute 1004.28. The legislature could have provided a direct provision for sovereign immunity for such organizations but did not, unlike, and I’ll give you some examples ... In every one of those instances the legislature specifically provided for sovereign immunity in the enabling statute.
This obviously begs the question as to why didn’t the legislature address the question of sovereign immunity in Florida Statute 1004.28. The answer lies in the history of 1004.28. University direct-support organizations were formed to promote private fund-raising in support of public universities. It is unlikely that the legislature when authorizing 1004.28 envisioned the present scope of the UCF Athletic Association.
As previously stated, however, the supreme court has already decided that a statute declaring a corporation to be an instrumentality of the state is not required for a corporation to be entitled to immunity under the statute.

. While recognizing UCFAA was created by UCF, the Planchers argue that the agreement between UCF and UCFAA defeats UCFAA’s argument that it acts primarily as an instrumentality of UCF. Citing Mingo, the Planchers reference the language in the agreement expressly stating that nothing contained within it “shall be construed to create a joint venture, partnership, or other like relationship” between UCF and UCFAA. 638 So.2d at 86.
In Mingo, the second district, looking specifically at the relationship between the healthcare provider and the county jail, found that the contract between the two parties disavowed the provider as a corporation primarily acting as an instrumentality or agency of the state because the contract expressly stated that the provider "was an independent contractor and is neither an agent, employee, partner nor joint venture of or with the SHERIFF or with the Board of County Commissioners for Hillsborough County, Florida.” Id. Although the Services Agreement in the present case states that it should not be construed to create a joint venture, partnership, or other like relationship, unlike Mingo, it does not expressly state that UCFAA is an independent contractor or that UCFAA is not an agent of UCF. Accordingly, we do not accept the Planchers' argument and find the Services Agreement does not disavow an instrumentality or agency relationship.

. Betterson involved a negligence action instituted after the plaintiff suffered injury in a highway collision between a car and a cow owned by PRIDE. 648 So.2d at 779.

. In what it called an “unusual action for declaratory relief,” the second district refused to issue a blanket ruling in Pagan. Id. at 262. Instead, it limited its ruling to the patients’ malpractice action against one doctor in First Physicians Group. Id. at 264.

. The judgment entered against UCFAA shall be reduced to $200,000 in accordance with *1110 section 768.28(5), Florida Statutes. Any amount over the statutory cap must be sought by the Planehers in a claim bill filed in the Florida Legislature. See § 768.28(5), Fla. Stat.; Wagner v. Orange County, 960 So.2d 785, 787 (Fla.2007) (explaining that "a claim bill is not obtainable by right upon the claimant’s proof of entitlement, but rather is granted strictly as a matter of legislative grace.”).