Mr. Peter Gianino Chair, Florida Commission for the Transportation Disadvantaged 605 Suwannee Street, MS-49 Tallahassee, Florida 32399-0450
Dear Mr. Gianino:
On behalf of the Florida Commission for the Transportation Disadvantaged, you ask substantially the following questions:
1. Are the conclusions reached in Attorney General 99-05 still valid and would they apply to the subcontractors of a nongovernmental community transportation coordinator?
2. May a community transportation coordinator or subcontractor participate in the intergovernmental programs for insurance pools authorized in section 163.01, Florida Statutes?
Question One
In Attorney General Opinion 99-05, this office concluded that a nongovernmental community transportation coordinator exercising the duties and powers prescribed in Part I, Chapter 427, Florida Statutes, would be acting primarily as an instrumentality of the state and may claim sovereign immunity under section 768.28, Florida Statutes. Such a conclusion was based on the definition of "state agencies or subdivisions" in section 768.28(2), Florida Statutes, which includes "corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities[.]"[1]
The determination as to whether a nongovernmental corporation is primarily acting as an instrumentality of the state depends on whether the day-to-day operations of the entity are subject to extensive governmental control.[2] After reviewing the duties imposed by Part I, Chapter 427, Florida Statutes, on community transportation coordinators (CTCs) and the oversight granted by the statutes to the Commission and the local coordinating boards, as well as the fact that the contractual agreement did not indicate that the CTCs were acting as independent contractors, this office concluded in Attorney General Opinion 99-05 that the nongovernmental CTCs were acting primarily as an instrumentality of the state and thus were covered under section 768.28, Florida Statutes.
While Chapter 427, Florida Statutes, has been amended since Attorney General Opinion 99-05 was issued,[3] such subsequent amendments do not alter the conclusions reached in that opinion. Nor does there appear to be subsequent case law that would change the opinion's conclusion. Thus, I am of the view that Attorney General Opinion 99-05 is still valid.
You also inquire, however, about the subcontractors of the nongovernmental CTCs. Section 427.013(9), Florida Statutes, authorizes the commission to set standards for not only the CTCs but also for any transportation operator or coordination contractor from whom service is purchased or arranged by the CTC covering coordination, operation, safety, insurance, eligibility for service, costs, and utilization of transportation disadvantaged services.[4] However, the statutes do not provide for the same type of governmental control over the subcontractors as they do for the CTCs. For example, Part I of Chapter 427, Florida Statutes, sets forth with specificity the duties and responsibilities of a CTC, whose performance in providing such services is evaluated by the local coordinating board using evaluation criteria approved by the Commission for the Transportation Disadvantaged.[5]
Thus, the exercise of these legislatively granted powers and duties by a CTC is subject to the oversight of the Commission for the Transportation Disadvantaged and the local coordinating board. No such specificity or governmental oversight, however, is provided in Part I of Chapter 427 for subcontractors of the CTCs. Accordingly, I cannot conclude that Part I, Chapter 427, Florida Statutes, subjects subcontractors of the CTCs to day-to-day control by the state so as to make such subcontractors "instrumentalities of the state." While the contract with a subcontractor may provide for such control,[6] I am of the opinion that the statutory scheme in Part I, Chapter 427 does not provide sufficient extensive governmental control over the subcontractor's day-to-day operations for it to constitute an instrumentality of the state based on the statutes alone.
Question Two
You ask whether a community transportation coordinator or subcontractor may participate in the intergovernmental programs for insurance pools authorized in section 163.01, Florida Statutes.
Section 163.01(3)(h), Florida Statutes, defines "Local government liability pool" to mean "a reciprocal insurer as defined in s. 629.021 or any self-insurance program created pursuant to s. 768.28(15), formed and controlled by counties or municipalities of this state to provide liability insurance coverage for counties, municipalities, or other public agencies of this state, which pool may contract with other parties for the purpose of providing claims administration, processing, accounting, and other administrative facilities."[7] The term "Public agency" is defined in section 163.01(3)(b), Florida Statutes, to mean
"a political subdivision, agency, or officer of this state or of any state of the United States, including, but not limited to, state government, county, city, school district, single and multipurpose special district, single and multipurpose public authority, metropolitan or consolidated government, an independently elected county officer, any agency of the United States Government, a federally recognized Native American tribe, and any similar entity of any other state of the United States."
A nongovernmental community transportation coordinator and his or her subcontractors would not appear to fall within the above definition of "public agency." While a CTC may operate as an "instrumentality of the state" for purposes of section 768.28, Florida Statutes, and thus constitute a "state agency or subdivision" as the term is defined by that statute, this does not result in a CTC constituting a public agency for purposes of any statute. Section 163.01, Florida Statutes, specifically provides who may participate in the limited government liability pools. The statute further defines "public agency." Where a statute contains a definition of a phrase, that meaning must be ascribed to the phrase whenever repeated in the same statute unless a contrary intent clearly appears.[8]
Accordingly, I am of the opinion that neither a community transportation coordinator nor subcontractor is currently authorized to participate in the limited government liability pools authorized in section 163.01, Florida Statutes.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See, s. 768.28(2), Fla. Stat., which states that "[a]s used in this act, state agencies or subdivisions' include the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority."
[2] See, Prison Rehabilitative Industries v. Betterson, 648 So.2d 778,780-781 (Fla. 1st DCA 1994) (statutory constraints cumulatively constitute sufficient governmental control over PRIDE's daily operations to require the conclusion as a matter of law that PRIDE has acted primarily as an instrumentality of the state); and Shands TeachingHospital and Clinics, Inc. v. Lee, By and Through Lee, 478 So.2d 77, 79
(Fla. 1st DCA 1985) (Shands' day-to-day operations are not under direct state control).
[3] See, e.g., section 25, Ch. 00-266, Laws of Florida, which amended s. 427.013(9), Fla. Stat., to authorize the commission to develop by rule standards for community transportation coordinators and any transportation operator or coordination contractor from whom service is purchased or arranged by the community transportation coordinator.
[4] Such standards and rules must include, but are not limited to:
"(a) Inclusion, by rule, of acceptable ranges of trip costs for the various modes and types of transportation services provided.
(b) Minimum performance standards for the delivery of services. These standards must be included in coordinator contracts and transportation operator contracts with clear penalties for repeated or continuing violations.
(c) Minimum liability insurance requirements for all transportation services purchased, provided, or coordinated for the transportation disadvantaged through the community transportation coordinator."
[5] Section 427.015(2), Fla. Stat.
[6] Whether a contract contained sufficient controls for governmental oversight of the subcontractors would involve mixed questions of law and fact.
[7] See, s. 163.01(7)(e)1., Fla. Stat., authorizing a separate legal entity, created pursuant to the provisions of s. 163.01 and controlled by counties or municipalities of this state, the membership of which consists only of public agencies of this state, to exercise all powers in connection with the authorization, issuance, and sale of bonds for the purpose of financing acquisition of liability coverage contracts from one or more local government liability pools to provide liability coverage for counties, municipalities, or other public agencies of this state; and s. 163.01(7)(e)2., Fla. Stat., authorizing counties or municipalities to issue bonds for the purpose of acquiring liability coverage contracts from a local government liability pool. And see, s. 163.01(7)(e)6., Fla. Stat., stating that the participation by any county, municipality, or other public agency of this state in a local government liability pool shall not be deemed a waiver of immunity to the extent of liability coverage, nor shall any contract entered regarding such a local government liability pool be required to contain any provision for waiver.
[8] See, e, g., Racetrac Petroleum, Inc. v. Delco Oil, Inc.,721 So.2d 376, 377 (Fla. 5th DCA 1998) (where legislature has used particular words to define a term, court does not have the authority to redefine it); Richard Bertram Company v. Green, 132 So.2d 24
(Fla.3d DCA 1961), cert. denied, 135 So.2d 743 (Fla. 1961), Appealdismissed, 136 So.2d 343 (Fla. 1961); Op. Att'y Gen. Fla. 85-98 (1985).