# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2021-2485
_____

NORTH BROWARD HOSPITAL
DISTRICT, MOUNT SINAI
MEDICAL CENTER OF FLORIDA,
INC., and NAPLES COMMUNITY
HOSPITAL, INC., on behalf of
themselves and all others
similarly situated,

      Appellants,

      v.

STATE OF FLORIDA, AGENCY FOR
HEALTH CARE ADMINISTRATION,

      Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

November 6, 2024

M.K. THOMAS, J.

This appeal requires us to determine whether a 2020 statutory amendment abrogated our 2019 decision prohibiting retrospective audits of hospital claims involving pre-authorized and paid emergency services provided to undocumented immigrants. *See Lee Mem'l Health Sys. Gulf Coast Med. Ctr. v. Agency for Health Care Admin.*, 272 So. 3d 431 (Fla. 1st DCA 2019)

(*Gulf Coast*). We hold that the statutory amendment did not legislatively overrule *Gulf Coast*, but rather merely clarified existing law. We reverse the summary final judgment to the contrary and remand for further proceedings.[1]

## I. *Statutes*

The relevant statutes are part of Florida's Social Welfare Act, chapter 409 of the Florida Statutes. In pertinent part, the Act implements obligations imposed on Florida by Title XIX of the federal Social Security Act, including the healthcare obligations at issue here. Portions of sections 409.905 and 409.913, Florida Statutes, are controlling.

### (A) 2019 Version of Section 409.905(5)(a)

In 2019, when we issued *Gulf Coast*, section 409.905(5)(a) provided in pertinent part as follows:

(a) The agency may implement reimbursement and utilization management reforms in order to comply with any limitations or directions in the General Appropriations Act, which may include, but are not limited to: prior authorization for inpatient psychiatric days; prior authorization for nonemergency hospital inpatient admissions for individuals 21 years of age and older; authorization of emergency and urgent-care admissions within 24 hours after admission; enhanced utilization and concurrent review programs for highly utilized services; reduction or elimination of covered days of service; adjusting reimbursement ceilings for variable costs; adjusting reimbursement ceilings for fixed and property costs; and implementing target rates of

---

[1] Because we find that the legislature did not abrogate *Gulf Coast* when it amended the statute, we need not address whether the trial court erred in determining the amended statute applied retrospectively.

increase. The agency may limit prior authorization for hospital inpatient services to selected diagnosis-related groups, based on an analysis of the cost and potential for unnecessary hospitalizations represented by certain diagnoses. Admissions for normal delivery and newborns are exempt from requirements for prior authorization. In implementing the provisions of this section related to prior authorization, the agency shall ensure that the process for authorization is accessible 24 hours per day, 7 days per week and authorization is automatically granted when not denied within 4 hours after the request. Authorization procedures must include steps for review of denials. *Upon implementing the prior authorization program for hospital inpatient services, the agency shall discontinue its hospital retrospective review program*.

§ 409.905(5)(a), Fla. Stat. (2019) (emphasis added).

### (B) 2020 Version of Section 409.905(5)(a)4

In 2020, the legislature amended section 409.905(5)(a) to provide in pertinent part as follows:

Upon implementing the prior authorization program for hospital inpatient services, the agency shall discontinue its hospital retrospective review program. *However, this subparagraph may not be construed to prevent the agency from conducting retrospective reviews under s. 409.913, including, but not limited to, reviews in which an overpayment is suspected due to a mistake or submission of an improper claim or for other reasons that do not rise to the level of fraud or abuse.*

§ 409.905(5)(a)4., Fla. Stat. (2020) (emphasis added).

The bill affecting this 2020 amendment states that the amended statute "confirms and clarifies existing law." Ch. 2020-156, §§ 38–39, Laws of Fla. No reference is made to legislatively overruling *Gulf Coast*.

### (C) Section 409.913

Also relevant to this analysis is section 409.913(1)(e), which the legislature did *not* amend after *Gulf Coast*. It governs the Agency's obligation and authority to ensure the integrity of the Medicaid program, including recovery of overpayments. In pertinent part, it provides as follows:

> The agency shall operate a program to oversee the activities of Florida Medicaid recipients, and providers and their representatives, to ensure that fraudulent and abusive behavior and neglect of recipients occur to the minimum extent possible, and to recover overpayments and impose sanctions as appropriate.

> \* \* \* \* \*

> (e) "Overpayment" includes any amount that is not authorized to be paid by the Medicaid program whether paid as a result of inaccurate or improper cost reporting, improper claiming, unacceptable practices, fraud, abuse, or mistake.

Section 409.913 includes multiple additional provisions for recouping overpayments, which again were not changed in 2020 (or thereafter). *See* §§ 409.913(11), (15)(i), (16)(c), (16)(j), (20), (25)(c), (27), Fla. Stat.

## II. *Facts*

The relevant facts are similar to those detailed in *Gulf Coast*. *See id.* at 432–34. Through the Alien Audit Program (AAP), Florida's Agency for Health Care Administration (the Agency) reviews all paid in-patient hospital claims for pre-approved emergency services provided to undocumented immigrants. Before *Gulf Coast*, if the Agency's after-the-fact review demonstrated that it had erred in determining the existence or duration of the emergency medical condition, the Agency demanded repayment. We held in *Gulf Coast* that the Agency could not recoup such previously approved payments, even if the Agency later

determined its pre-approval had been mistaken or overbroad.[2] Following *Gulf Coast*, the Agency issued refunds to Lee Memorial, but not to the Appellants here (collectively, NBH). Relying on *Gulf Coast*, NBH sued the Agency for breach of contractual provider agreements, seeking a refund of the improperly recouped amounts. NBH alleged that, after pre-authorizing and paying for inpatient emergency services for undocumented immigrants, the Agency lacked authority to demand repayment based on its own error in determining the existence or duration of the emergency medical condition—the very question we resolved adverse to the Agency in *Gulf Coast*.

NBH sought summary judgment as to liability, arguing that the 2020 amendment to section 409.905(5) is consistent with *Gulf Coast* and does not abrogate it. NBH advanced three arguments. First, section 409.905(5)(a) still precludes the Agency from conducting general retrospective reviews of previously authorized claims. Second, the legislature did not amend section 409.913 to give the Agency new authority to conduct general retrospective reviews of previously authorized claims, but rather clarified that section 409.905(5)(a) did not limit the Agency's existing authority under section 409.913. Third, the statutory change did not supplant the common law doctrine of administrative finality.

---

[2] In *Gulf Coast*, in response to the Centers for Medicare and Medicaid Services' federal audit, the Agency initiated the Undocumented Alien Project ("the Project"). 272 So. 3d at 433. "Under the flag of the Project, the Agency began audits of all paid in-patient hospital claims for emergency services provided to alien recipients in Florida between July 2005 and June 2010." *Id.* at 437. Before this, the Agency paid claims prior to any review; however, it later conducted a retrospective review on a percentage of all claims to determine if they had been properly paid. *Id.* If upon retrospective review the Agency suspected fraud or abuse, the claim was referred to its Medicaid Program Integrity (MPI) office, which only conducted reviews on claims that appeared to be outliers or had abnormal billing patterns. *Id.* MPI's function was to investigate possible Medicaid abuse. *Id.* Before the Agency initiated the retrospective reviews such as in *Gulf Coast*, the MPI office did not conduct general retrospective reviews. *Id.*

The Agency, on the other hand, argued that the 2020 amendment abrogated *Gulf Coast*, and that the amended statute allows general retrospective audits to address "overpayment" even for pre-authorized services and on grounds not covered by the repayment provisions in section 409.913. In support, the Agency relied on the amendment's legislative history and the close temporal proximity between issuance of the *Gulf Coast* opinion and the statutory amendment.

In the order on appeal, the trial court agreed with the Agency, concluding that the legislature amended section 409.905(5)(a) to abrogate *Gulf Coast*. The trial court concluded that the statutory amendment was intended to clarify that retrospective reviews under section 409.913 were not limited to instances where fraud or abuse was suspected. The order found as follows: (1) the legislature's express statement that it was the "intent of the legislature that [the amended statute] confirms and clarifies existing law"; (2) the close proximity between the decision in *Gulf Coast* and the legislature's enactment of the clarifying legislation; and (3) the legislative history, which was "consistent with the plain language of the amended statute and confirm[ed] that Section 409.905(5)(a) shall not operate to bar [the Agency] 'from conducting retrospectives review under s. 409.913,' including the Audit Program." But, as will be explained, this premise is fundamentally incorrect. In addition, the trial court concluded that application of the amended statute was required because the amendment was not a substantive change but "a clarification of existing law." As a result, the court rejected NBH's assertion that retroactive application of the amended statute to Agency action was unconstitutional.

Finally, the trial court rejected NBH's arguments that the audits were not authorized because the services at issue were pre-authorized, and that the statutory definition of "overpayment" excluded any amounts for which prior authorization was obtained. The court concluded that NBH's position was contrary to the plain language of the amended statute and its legislative history and would "undermine Federal and Florida Medicaid law that mandate [the Agency] to require repayment of any overpayment for services not billed in accordance with law." Subsequently, the Agency filed

6

its own motion for final summary judgment. The trial court granted the motion, resulting in this appeal.

### III. *Analysis*

### (A) *Standard of Review*

"A trial court's ruling on a motion for summary judgment posing a pure question of law is subject to de novo review." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citing *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074 (Fla. 2001)); *see also Direct Gen. Ins. Co. v. Morris*, 884 So. 2d 1077, 1078 (Fla. 1st DCA 2004). "Statutory interpretation is a question of law and also subject to de novo review." *Kuria v. BMLRW, LLLP*, 101 So. 3d 425, 426 (Fla. 1st DCA 2012) (citing *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)).

### (B) *Statutory Interpretation*

In 2022, the Florida Supreme Court reinforced a clear tenet of statutory interpretation: to derive the meaning of statutes, we look first to the text itself, as understood in its context—not to any purported intent underlying the text. *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022); *see also Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023) ("When we construe statutes, 'our first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used' when the statute was enacted."); *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) ("[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction." *Conage*, 346 So. 3d at 598 (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)). Further, "[t]he mere change of language does not necessarily indicate an intent to change the law for the intent may be to clarify what was doubtful and to safeguard against misapprehensions as to existing law." *Prison Rehab. Indus. v. Betterson*, 648 So. 2d 778, 780 (Fla. 1st DCA 1994) (quoting *State ex. re. Szabo Food Servs., Inc. v. Dickinson*, 286 So. 2d 529, 531 (Fla. 1973)). In short, if the

legislature meant to overrule *Gulf Coast* through its 2020 amendments, it should have been far more direct and clear in doing so. We cannot be left to guess what the legislature intended but did not say.

The actual legislative changes do not support the Agency's statutory-interpretation arguments. In 2019, section 409.905(5) provided in pertinent part as follows:

> The agency may implement reimbursement and utilization management reforms to comply with any limitations or directions upon the General Appropriations Act . . . Upon implementing the prior authorization program for hospital inpatient services, the agency shall discontinue its hospital retrospective review program.

§ 409.905(5)(a), Fla. Stat. (2019).

The 2020 amendment simply divided the 2019 statutory language into four sub-subsections and added the last sentence in subpart 4, as follows:[3]

> (a)1. The agency may implement reimbursement and utilization management reforms in order to comply with any limitations or directions in the General Appropriations Act, which may include, but are not limited to: prior authorization for inpatient psychiatric days; prior authorization for nonemergency hospital inpatient admissions for individuals 21 years of age and older; authorization of emergency and urgent-care admissions within 24 hours after admission; . . .

* * * * *

---

[3] The 2020 amendment occurred years after the Agency conducted its AAP audits, more than one year after this Court decided *Gulf Coast*, and approximately seven months after NBH filed its initial Complaint.

4. Upon implementing the prior authorization program for hospital inpatient services, the agency shall discontinue its hospital retrospective review program. *However, this subparagraph may not be construed to prevent the agency from conducting retrospective reviews under s. 409.913, including, but not limited to, reviews in which an overpayment is suspected due to a mistake or submission of an improper claim or for other reasons that do not rise to the level of fraud or abuse.*

§ 409.905(5)(a)1., 4., Fla. Stat. (2020) (emphasis added). The legislature itself explained that the emphasized sentence was added to "confirm[] and clarif[y] existing law." Ch. 2020-156, §§ 38–39, Laws of Fla.

Notably, section 409.913 remained untouched in the 2020 amendment. At no time before or after the 2020 amendment has section 409.913 authorized the Agency to conduct carte blanche general retrospective audits of any claims, let alone pre-authorized claims. Section 409.913 imposes prerequisites on the Agency's retrospective audit authority. In *Gulf Coast,* we made clear that while section 409.913 does allow retrospective audits, it is only under listed circumstances; i.e., claims not previously reviewed (not a pre-authorized claim) where fraudulent acts are suspected, *among other reasons*. 272 So. 3d at 438–39 (emphasis added). We explained this point as follows:

[S]ection 409.905's prohibition only applies to hospital inpatient services that are subject to prior authorization review, [and] the ALJ's interpretation leaves intact the Agency's authority to conduct retrospective reviews for all other matters, including reviews of prior authorized claims to determine if the claim for prior authorization was materially false. § 409.913(15)(i), (16)(c), Fla. Stat. As such, the ALJ's interpretation does not render the review function meaningless and preserves both statutes.

*Id.* at 439.

The amended statute did not remove the prohibition against the Agency's conducting general retrospective reviews of

previously authorized claims, nor expand the Agency's authority to conduct retrospective reviews of previously authorized claims to review issues that did not rise to the level of fraud or abuse. It did not abrogate *Gulf Coast*. The amendment incorporated the holding of *Gulf Coast* into section 409.905. That is, while the Agency has general authority to conduct retrospective reviews for suspected overpayments as authorized under section 409.913, once the Agency has pre-approved claims, it loses authority to review specifically for fraud or abuse, by operation of section 409.913(1)(e).

Although the language of the amended statute is clear and unambiguous, the trial court improperly resorted to rules of statutory interpretation and failed to give effect to each word in the amended statute. Courts must give significance and effect to every word and phrase in a statute. *See Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.,* 948 So. 2d 599, 606 (Fla. 2006). Applying the trial court's interpretation of the amended statute, the prohibition against the Agency's conducting general retrospective reviews of previously authorized claims set out in section 409.905(5)(a)—which the legislature implemented in 2002 and chose not to repeal in the 2020 amendment—is improperly rendered meaningless. *See generally, M.D. v. State*, 993 So. 2d 1061, 1063 (Fla. 1st DCA 2008) ("[C]ourts should avoid interpretations that would render part of a statute meaningless."); *Fla. Dep't of Educ. v. Cooper*, 858 So. 2d 394, 396 (Fla. 1st DCA 2003). Similarly, the trial court's interpretation also renders meaningless the limitations in section 409.913 as to the Agency's retrospectively reviewing previously authorized claims if it suspects fraud or abuse. Again, it may do so under section 409.913, if materially false information is submitted to acquire a prior authorization. *See* § 409.913(15)(i), Fla. Stat.*; Palm Beach Cnty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1287–88 (Fla. 2000) ("[A]ll parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with another.").

Further, while applying the rules of statutory interpretation the trial court erred by failing to construe statutes that relate to the same subject or object in pari materia. "The doctrine of *in para*

10

*materia* requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." *Zold v. Zold,* 911 So. 2d 1222, 1229–30 (Fla. 2005). In effect, the trial court's interpretation of the amended statute renders meaningless the intentional limitations on the Agency's authority to conduct retrospective reviews under sections 409.905(5)(a) and 409.913.

The Agency concedes that the statutory limitations regarding its retrospective-audit authority remain, and that the amended statute clarifies that per section 409.913, it may conduct retrospective reviews on non-pre-authorized claims "in which an overpayment is suspected . . . for other reasons that do not rise to the level of fraud or abuse." Where the Agency and the trial court are incorrect is the scope of the Agency's authority under section 409.913 and, more specifically, whether previously authorized claims meet the definition of "overpayment." *Gulf Coast* held they did not. The Agency asserts that the legislature's 2020 amendment to section 409.905(5)(a), responds to *Gulf Coast*, where this Court held that retrospective audits are allowed only "in the context of claims not previously reviewed and where fraudulent acts are suspected . . . ." *Gulf Coast*, 727 So. 3d at 439. The Agency takes this clause out of context and misconstrues the entire holding of *Gulf Coast* as barring retrospective review of all claims unless fraud and abuse are suspected.

*Gulf Coast* determined that the Agency's authority to conduct retrospective reviews of previously authorized claims (i.e., claims that do not meet the statutory definition of "overpayment") was limited by section 409.913 and did not allow such reviews for suspected fraud or abuse. However, it did not constrain the Agency's authority to review claims that meet the definition of "overpayment" (i.e., claims that have not been previously authorized) or fell under other provisions, not relevant here. i.e. section 409.913(15)(i). We agree with NBH that the Agency's misstatement of the holding in *Gulf Coast* "is the faulty premise underlying [the Agency's] arguments and the Circuit Court's decision."

Specifically, section 409.913, as it existed when *Gulf Coast* was written, and as it exists now, gives AHCA authority to conduct

11

reviews only to "determine possible fraud, abuse, overpayment, or recipient neglect in the Medicaid program . . . ." § 409.913(2), Fla. Stat. As the audits at issue in this case did not target fraud or abuse and had nothing to do with recipient neglect, the only remaining authority is where an overpayment is suspected. *Gulf Coast*, however, already dealt with the authority to conduct audits based on overpayment.

The Agency admits that the "Legislature retained the sentence in section 409.905(5)(a) prohibiting retrospective reviews" that *Gulf Coast* relied upon to conclude that it did not have the authority to conduct general retrospective reviews of prior-authorized claims. On this concession, the trial court's ruling that the amended statute abrogated this Court's interpretation of section 409.905(5)(a) cannot be accepted. After conceding that the statutory prohibition remains, the Agency further acknowledges that the amended statute clarifies that the Agency may conduct retrospective reviews "in which an overpayment is suspected . . . for other reasons that do not rise to the level of fraud or abuse" under section 409.913.

Absent from the trial court's analysis is that "overpayment" is statutorily defined as "any amount that is not authorized to be paid by the Medicaid program whether paid as a result of inaccurate or improper cost reporting, improper claiming, unacceptable practices, fraud, abuse, or mistake." § 409.913(1)(e), Fla. Stat. The legislature did not amend this definition; it reiterated it in the amended statute. *Gulf Coast* concluded that the AAP claims did not meet the definition of "overpayment" because they were all preauthorized. It is undisputed that the AAP audits did not involve any allegations of fraud, abuse, or recipient neglect. Accordingly, the only basis to conduct the reviews is to determine the existence of an "overpayment." But the trial court's conclusion failed to respect the statutory definition of "overpayment." Previously authorized claims cannot be overpayments, as a matter of law. The trial court's interpretation improperly creates Agency authority that is absent from section 409.913.

Had the legislature intended the amended statute to apply to previously authorized claims, it could and would have done so clearly and with ease. It did not. Rather, to the extent there was

ambiguity in the *Gulf Coast* decision regarding the Agency's right to conduct retrospective review of claims that "were not previously reviewed," the plain and unambiguous language of the amended statute clarified that the Agency has the authority under section 409.913 to do so for reasons that do not rise to fraud or abuse. As the statutory definition of "overpayment" is defined to include "any amount that is not authorized to be paid by the Medicaid program whether paid as a result of inaccurate or improper cost reporting, improper claiming, unacceptable practices, fraud, abuse, or mistake," the legislature was clearly not expanding the Agency's authority, but rather reiterating its limits. § 409.913(1)(e), Fla. Stat. Importantly, this clarification has no bearing on this case, as all of the AAP claims were pre-authorized.

The trial court erred in applying an interpretation that is inconsistent. It concluded that section 409.905(5)(a)(4), as amended, bars the Agency from conducting a general retrospective review program for previously authorized claims, but that under section 409.13, the general authority to do so is given back. This interpretation is inconsistent with section 409.913(2), which sets out the Agency's general authority to conduct reviews to "determine possible fraud, abuse, overpayment, or recipient neglect in the Medicaid program . . . ." *Id.*

### (C) Legislative History

The trial court relied substantially on legislative history—one that is inherently incorrect and unreliable.[4] The trial court found

---

[4] The trial court's legislative history analysis relied heavily on language in a Staff Analysis and Final Bill Analysis from the Florida House of Representatives that discussed proposed committee amendments to HB 731 that were not enacted into law and that are inconsistent with the plain language of the amended statute. The trial court adopted the Agency's position, as reflected in both Legislative Analyses, that *Gulf Coast* relied "'on an obsolete reference' in [section 409.905(5)(a)]" limiting retroactive audits that applied to a hospital prepayment review program that no longer exists" and, because of that, the legislature intended to abrogate *Gulf Coast*. However, the "obsolete language" to which the Agency, the Legislative Analyses, and the trial court are

13

the legislative history "supports [the Agency's] position and the [trial court's] interpretation of the plain language of the Amended Statute." However, only if the statutory language is unclear should Florida courts "apply rules of statutory construction and explore legislative history to determine legislative intent." *Bautista v. State*, 863 So. 2d 1180, 1185–86 (Fla. 2003) (citing *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000)).

To the extent the trial court relied upon legislative history to conclude that section 409.905(5)(a)4. was intended to abrogate *Gulf Coast*, it is misplaced. Citing this Court's decision in *Gulf Coast*, the final bill analysis prepared by House of Representatives staff indicated that "the First District Court of Appeal ruled that s. 409.905(5)(a), F.S., precludes post-payment audits, including the Alien Audit Program audits, to determine the appropriateness of reimbursement, including whether prior authorization was obtained under false pretenses." Notably, this statement is incorrect. In *Gulf Coast*, we held that section 409.905(5)(a) only precluded general retrospective audits to determine the appropriateness of reimbursement for pre-authorized hospital inpatient services, and that section 409.913 allowed retrospective audits where prior authorization was obtained under false pretenses. The final bill analysis then noted that "the directive in s. 409.905(5)(a), F.S., to discontinue an inpatient retrospective review program was intended to refer to a specific program conducted in the Division of Medicaid when the Division shifted to a prior authorization review." The analysis then stated, "[t]he bill removes this obsolete language and adds language to clarify that [the Agency] may conduct reviews to determine fraud, abuse and overpayment in the Medicaid program." We agree with NBH that

_____

referring is the statutory bar precluding the Agency from conducting general retrospective reviews of previously authorized claims, which was added to section 409.905(5)(a) in 2002 and *remains* in the amended statute. The trial court also relied on staff analysis reports premised on inaccurate interpretations of *Gulf Coast*—i.e., that Gulf Coast prohibited all post-payment audits. *See* Fla. H.R. Comm. on Health & Human Servs. Staff Analysis (Feb. 28, 2020).

this is another misstatement because the "obsolete" language was retained in the final bill. Moreover, this analysis was carried over word-for-word from the staff analyses of prior versions of the bill, which proposed several amendments to section 409.905(5)(a) that did not survive to the final bill.

It is even more difficult to give substance to the concluding sentence of the final bill analysis that "MPI [the Agency's Bureau of Medicaid Program Integrity] would be able [to] continue conducting respective reviews of hospital claims." We agree with NBH that alternatively, based on the actual language contained in the final bill, the trial court erred in entering summary judgment for the Agency upon concluding that section 409.905(5)(a)4. abrogated *Gulf Coast* and allowed the Agency to conduct retrospective audits of paid Medicaid claims to recover overpayments for pre-authorized hospital inpatient emergency services to undocumented immigrants.

## IV. *Conclusion*

The 2020 amendments to section 409.905 did not abrogate *Gulf Coast* but serve only to clarify exiting law. We reverse the trial court's order, and remand for entry of an order granting NBH's motion for partial summary judgment.

REVERSED and REMANDED.

KELSEY, J., concurs; B.L. THOMAS, J., dissents without opinion.

————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

————————————————

Alvin D. Lodish, Joanne B. Erde, and Julian A. Jackson-Fannin, Duane Morris LLP, Miami; Steven L. Brannock, Philip J. Padovano, and Joseph T. Eagleton, Brannock Berman & Seider, Tampa, for Appellants.

Joseph M. Goldstein, Amy Wessel Jones, and Eric M. Yesner, Shutts & Bowen LLP, Fort Lauderdale; Daniel E. Nordby, Shutts & Bowen LLP, Tallahassee, for Appellee.